Dale M. Cendali
Claudia Ray
Shanti Sadtler Conway
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
claudia.ray@kirkland.com
shanti.conway@kirkland.com

Megan L. McKeown
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
megan.mckeown@kirkland.com

*Attorneys for Plaintiff Delta Air Lines, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DELTA AIR LINES, INC., <br><br> Plaintiff, <br><br> - against - <br><br> THE LIGHTSTONE GROUP, LLC, <br><br> Defendant. | CASE NO. 1:21-mc-374 (RA) (OTW) <br><br> ECF Case <br><br> **DELTA AIR LINES, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE LIGHTSTONE GROUP, LLC'S COMPLIANCE WITH RULE 45 DOCUMENT SUBPOENA** |

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ................................................................................................................................ 3

**I.**     **The Subpoena Seeks Highly Relevant Documents** ........................................................ 3

      A.     Internal Lightstone Documents Are Highly Relevant ............................................ 3

      B.     Communications with Marriott Are Not Duplicative ............................................. 5

      C.     Delta Does Not Seek Production of Publicly Available Documents ...................... 7

**II.**    **The Subpoena Does Not Impose An Undue Burden on Lightstone** ............................. 8

**III.**   **Lightstone Has Failed To Establish A Basis For Cost Shifting** .................................... 9

**CONCLUSION** .......................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amphenol Corp. v. Fractus, S.A.*,
  No. 19 MISC. 160, 2019 WL 2521300 (S.D.N.Y. June 19, 2019) ............................................ 7

*Arista Records LLC v. Lime Grp. LLC*,
  No. 06-CV-5936, 2011 WL 781198 (S.D.N.Y. Mar. 4, 2011) .................................................. 9

*Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*,
  No. M8-85, 1994 WL 9666 (S.D.N.Y. Jan. 12, 1994) ............................................................. 6

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
  Nat'l Ass'n*,
  Nos. 14-CV-9371, 14-CV-9764, 2017 WL 9401102 (S.D.N.Y. Mar. 2, 2017) ....................... 9

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
  No. 05 Civ. 6430, 2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) ....................................... 8, 10

*Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*,
  244 F. Supp. 3d 1368 (N.D. Ga. 2017) ................................................................................. 3, 4

*Heckler & Koch, Inc. v. German Sport Guns GmbH*,
  No. 11-CV-01108, 2014 WL 12756174 (S.D. Ind. Sept. 12, 2014) ......................................... 7

*John H. Harland Co. v. Clarke Checks, Inc.*,
  711 F.2d 966 (11th Cir. 1983) ................................................................................................. 3

*Kennedy v. Basil*,
  No. 18-CV-2501, 2019 WL 2343153 (S.D.N.Y. June 3, 2019) ............................................. 10

*Kenyon v. Simon & Schuster, Inc.*,
  No. 16 MISC. 327, 2016 WL 5930265 (S.D.N.Y. Oct. 11, 2016) .................................. 6, 8, 9

*Koopmann v. Robert Bosch, LLC*,
  No. 18-CV-4065, 2018 WL 9917679 (S.D.N.Y. May 25, 2018) ........................................... 10

*Morales v. Kavulich & Assocs., P.C.*,
  No. 16-CV-2134, 2017 WL 2712948 (S.D.N.Y. June 15, 2017) ........................................... 10

*In re Motions to Quash Subpoena filed by Craft Gallery, Ltd.*,
  Nos. 13-MC-081, 11-CV-1239, 2013 WL 8367788 (W.D. Tex. Apr. 5, 2013) ....................... 6

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
  325 F.R.D. 36 (E.D.N.Y. 2018) ............................................................................................... 4

*N'Diaye v. Metro. Life Ins. Co.*,
   No. 17-CV-4260, 2018 WL 2316335 (S.D.N.Y. May 8, 2018) ............................................6, 7

*PlayNation Play Sys., Inc. v. Velex Corp.*,
   924 F.3d 1159 (11th Cir. 2019) ........................................................................................3

*Scrum Alliance Inc. v. Scrum, Inc.*,
   No. 20-CV-227, 2020 WL 6559625 (E.D. Tex. Nov. 9, 2020) ..................................................6

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   No. C 08-80129, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008)................................................9

*WPIX, Inc. v. Broadcast Music, Inc.*,
   No. CV 11-4052, 2011 WL 9753912 (C.D. Cal. July 5, 2011) ............................................8, 9

Plaintiff Delta Air Lines, Inc. ("Delta"), through its counsel, respectfully submits this Reply Memorandum of Law in support of its Motion (the "Motion") to Compel the Lightstone Group, LLC's ("Lightstone") Compliance with its Rule 45 Document Subpoena (Dkt. 1), which Delta issued on February 11, 2021 (the "Subpoena").

## PRELIMINARY STATEMENT

Delta's targeted requests for highly relevant discovery have been met with delay and intransigence on the part of Lightstone, whose partner, non-party Marriott International, Inc. ("Marriott") is a defendant in the underlying litigation in Georgia (1:20-cv-01125-SCJ, the "Georgia Action") in which the Subpoena was issued.

In the Georgia Action, Delta has asserted trademark infringement claims against Marriott based on Marriott's use of the identical name, DELTA, for hotels. Marriott has asserted that its use of DELTA for its hotel chain is *not* likely to cause confusion with Delta's airline services (and thus does not infringe or dilute Delta's mark) because hotel and airline services are unrelated. Marriott took *the exact opposite* position, however, in 2018 and 2019 when it learned ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. The Subpoena seeks documents from Lightstone about Breeze and "Moxy," which would constitute evidence of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Rather than complying with the Subpoena, however, which Delta issued almost *three months* ago and offered to narrow considerably, Lightstone instead delayed, and then ultimately refused to search for responsive documents—forcing Delta to file its Motion. Lightstone's opposition to Delta's Motion offers more of the same, presenting a series of strawmen in an attempt to avoid the undeniable relevance, need, and narrow tailoring of Delta's requests. But each of Lightstone's arguments are unavailing.

*First*, contrary to Lightstone's contention, the documents that Delta seeks from it are *not* duplicative of *any* discovery Delta has obtained in the Georgia Action. As Delta explained in its Motion, Marriott has only produced a *single* document, after refusing for almost six months to produce *anything* in response to Delta's document request regarding MOXY. Moreover, Marriott's single document ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. It simply is not credible ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ that there would be *no* related internal Lightstone communications at all. Given Marriott's own insistence that it has no additional documents, Delta can only obtain any such additional documents from Lightstone itself.

As for Breeze, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. The same is true of the *two documents* that Delta currently is seeking from the Kilpatrick, Townsend & Stockton law firm ("Kilpatrick") in the Georgia Action: ██████████████████████████████████████████████████████████████████████████████████████████████████████████████.

*Second*, Lightstone mischaracterizes Delta's Motion as suggesting that only *Marriott's* beliefs, perspectives or actions are relevant to the issues in the Georgia Action. But Lightstone's *own* impressions and concerns also are relevant, not only because ███████████████████████████████████████████████████████████████████████████████████████████████████ but also because Lightstone's internal documents may contain or refer to ██████████████████████████████, or at the very least shed further light on Marriott's

2

concerns and actions, including why it took action against Breeze.

*Finally*, Lightstone's analysis of burden ignores critical context.  Lightstone summarily dismisses Delta's compromise proposal (which significantly narrows its requests), with a sweeping unsupported statement that the revision "essentially encompasses" the same scope.  This is false. Delta offered to substantially narrow its requests, and stands by that proposal.  Moreover, Lightstone's claim of undue burden hinges on its wholly false contention that these documents have already been obtained elsewhere.  Because Delta's revised request for documents from Lightstone is narrowly tailored, and the documents sought are directly relevant to Delta's claims against Marriott, there is no undue burden.

Delta is entitled to obtain discovery relevant to the Georgia Action against Marriott.  After months of delay, the Court should order Lightstone to search for the requested documents and, if any exist, produce them.

## ARGUMENT

### I.    THE SUBPOENA SEEKS HIGHLY RELEVANT DOCUMENTS

Contrary to Lightstone's arguments in opposition to Delta's Motion, the requested documents are highly relevant and not duplicative of the paltry discovery Marriott has provided.

#### A.    Internal Lightstone Documents Are Highly Relevant

Lightstone does not contest the relevance of ███████████████.  Nor could it—they would plainly be relevant to Marriott's belief as to whether there is a likelihood of confusion where airlines and hotels use the same name.  *See PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1168 (11th Cir. 2019) (analyzing "similarity of products" as part of likelihood of confusion analysis); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983) ("The greater the similarity between the products and services, the greater the likelihood of confusion."); *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244

3

F. Supp. 3d 1368, 1381–82 (N.D. Ga. 2017) (finding employee leasing company with HR services and temporary staffing firm were "similar—albeit not identical—services" and therefore similarity factor weighed in favor of likelihood of confusion). And because this is an issue "of consequence in determining the action," it is properly the subject of third-party discovery. *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018).

Instead, Lightstone argues that its own internal documents could not be relevant, contending that Delta claimed the only relevant issues were (1) "Marriott's reactions to the proposed 'Moxy' airline," (2) "Marriott's purported belief that use of MOXY for an airline would conflict with Marriott's use of MOXY as the name of a hotel chain," and (3) "Marriott's efforts to prevent Breeze from using 'Moxy' . . . ." (*See* Opp. at 2.) But this selective recitation wholly misrepresents Delta's position. In fact, Delta's Motion expressly sought documents further elucidating ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*See* Mot. at 3 (emphasis added).)

The relevance of such materials is clear. If Lightstone, as Marriott's sophisticated business partner for the MOXY hotels, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Exhibit C to the Declaration of Claudia Ray, dated March 25, 2021 (hereinafter "First Ray Decl."), filed under seal at Dkt. 2 (hereinafter "Ex. C")), that would be highly relevant to Delta's trademark infringement claim based on Marriott's own use of "Delta" for hotels. Nor is it mere speculation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

██████████████████████████████████

████████████████████████████. (See Ex. C at MARRIOTT0165231.)

Moreover, contrary to Lightstone's contention, it is easy to see how its internal communications could further elucidate ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ all could provide vital evidence as to *Marriott's* beliefs about the significance of Breeze's possible use of "Moxy."

B. <u>**Communications with Marriott Are Not Duplicative**</u>

Lightstone characterizes Delta's requests seeking communications with Marriott as duplicative because Delta "has already sought ***and received*** the same information." (*See* Opp. at 8 (emphasis added).) But this fundamental premise is plainly false.

In response to similar requests about "Moxy," Marriott produced only ████████████ (Ex. C), and has since confirmed that it has *no* additional documents relating to Breeze and "Moxy." As even a cursory reading of that one document reveals ████████████████ ████████████████████████████████, it is at least plausible (if not almost certainly the case) that ████████████████████████. Indeed, it seems virtually impossible that Marriott ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. C at MARRIOTT0165231–32.) With Marriott either unable or unwilling to produce ████████████████████████, however, Lightstone is Delta's only source for this highly relevant information.[1]

---

[1] Lightstone's argument that Delta's requests are duplicative of discovery Delta has obtained, or could obtain, from Breeze and Kilpatrick (*see* Opp. at 10) is entirely false . *First*, ████████████████████████████████

5

Because the documents Delta seeks from Lightstone cannot be obtained from Marriott, Lightstone's cited cases regarding redundant requests are irrelevant and readily distinguished. *See N'Diaye v. Metro. Life Ins. Co.*, No. 17-CV-4260, 2018 WL 2316335, at *8 (S.D.N.Y. May 8, 2018) (plaintiff moved to compel discovery from third party rather than from defendant or serving additional party discovery); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. M8-85, 1994 WL 9666, at *1 (S.D.N.Y. Jan. 12, 1994) (plaintiff requested documents from non-party law firm, not defendant, that defendant produced in different litigation in different district).

Moreover, some of the cited cases are also distinguishable because they addressed requests that were improper for another reason. For example, in *Scrum Alliance Inc. v. Scrum, Inc.*, No. 20-CV-227, 2020 WL 6559625, at *3 (E.D. Tex. Nov. 9, 2020), the court found the requested discovery could "necessarily [be] obtain[ed]" from the defendants, and that the requests were overbroad as they sought *all* correspondence between the defendants and non-parties, not limited to relevant correspondence. Similarly, in *In re Motions to Quash Subpoena filed by Craft Gallery, Ltd.,* Nos. 13-MC-081, 11-CV-1239, 2013 WL 8367788, at *2 (W.D. Tex. Apr. 5, 2013), not only had the plaintiff waived its right to seek the documents in the underlying action, but the court also found that the requested settlement agreement was both confidential and irrelevant. In *Audiotext Communications Network*, 1994 WL 9666, at *1, the court rejected the request for discovery from the third party where the documents could be obtained in the court where the main suit was

---

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████ they certainly are not duplicative of the information Delta seeks here. (*See* Declaration of Claudia Ray, sworn to as of May 7, 2021 at ¶¶ 4–6.) *Second*, even if there were any basis to believe that ██████████████████████████████████████████████ (*see Id*. at ¶¶ 7–11)—Lightstone admits that Kilpatrick too has refused to produce documents, and in any event, Marriott has now moved to quash Delta's subpoena to Kilpatrick. (*Id*. at ¶ 10; Opp. at 10.) The mere theoretical possibility that Kilpatrick *might* eventually be ordered to produce documents in the Georgia Action, and *might* have the same documents that Lightstone (Opp. at 10) does not render Delta's requests of Lightstone duplicative. *See, e.g.*, *Kenyon v. Simon & Schuster, Inc.*, No. 16 MISC. 327, 2016 WL 5930265, at *6 (S.D.N.Y. Oct. 11, 2016) ("The Court is not persuaded that simply because a subset of documents—i.e., communications with Clare—may also be available from Clare, Kenyon's requests are unreasonably duplicative or cumulative.").

6

pending. And in *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 11-CV-01108, 2014 WL 12756174, at *3 (S.D. Ind. Sept. 12, 2014), the court found the requests unduly burdensome based on over breadth where they sought information about products and valuations not at issue in the litigation, and sought information from a 10-year time period.

In contrast, a more recent decision distinguished one of Lightstone's cited cases, *N'Diaye*, and compelled third party discovery where "[Plaintiff] has timely sought the same discovery from the Carrier Defendants, and has reported discrepancies across the productions by Amphenol and these defendants in response to similar document demands." *Amphenol Corp. v. Fractus, S.A.*, No. 19 MISC. 160, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019). The situation here is comparable, as Delta first sought discovery from Marriott, which inexplicably produced only ▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Ex. C.) As it is reasonable to believe Lightstone has additional relevant documents, seeking those documents is proper. *Amphenol*, 2019 WL 2521300, at *11.

### C.   Delta Does Not Seek Production of Publicly Available Documents

Lightstone argues that Delta's Request No. 2 in the Subpoena seeks public documents and thus is improper as it is no more burdensome for Delta to obtain them. (*See* Opp. at 9.) This is yet another mischaracterization: Request No. 2 sought *Lightstone's* documents "concerning, referring or relating to" such third-party statements. (*See* Exhibit A to the First Ray Decl.) As Lightstone well knows, ▮▮▮▮▮▮▮▮▮▮▮▮ are central to Delta's inquiry. Indeed, as detailed in Delta's Motion, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Ex. C at MARRIOTT0165233.) In any event, Delta's compromise leaves no question that it seeks *Lightstone's* documents about any articles, not merely news articles themselves. (*See* Ex. D to the First Ray Decl. (hereinafter "Ex. D").)

7

## II.     THE SUBPOENA DOES NOT IMPOSE AN UNDUE BURDEN ON LIGHTSTONE

Delta's Subpoena does not impose an undue burden on Lightstone. Unable to deny that Delta offered to significantly narrow the Subpoena (Ex. D), Lightstone summarily dismisses Delta's proposal as "so broad that it essentially encompasses all nineteen of the original requests in the Subpoena." (*See* Opp. at 7.) Lightstone does not explain this statement, nor could it.

In fact, Delta offered to narrow its requests dramatically, to documents from four custodians for a one-year time period. (*See* Ex. D.) Lightstone fails to explain how this targeted search would be unduly burdensome.[2] Delta's proposal seeks necessary documents, is limited in breadth and time, clearly describes what is requested, and Lightstone has presented no specific facts regarding any burden. As such, production is appropriate. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430, 2007 WL 4410405, at *2–3 (S.D.N.Y. Dec. 17, 2007).

Lightstone argues that courts should afford particular sensitivity to burdens on non-parties, but ignores that "undue burden" considers the importance of the discovery sought. *Bridgeport*, 2007 WL 4410405, at *2; *Kenyon*, 2016 WL 5930265, at *6. In fact, courts regularly order third parties to produce highly relevant discovery, even where it could potentially be obtained elsewhere. For example, in *Kenyon*, the court found that the non-party's "substantial role" in the facts at issue made the value of its documents "significantly greater than the normal burden of production." *Id*. Similarly, in *WPIX, Inc. v. Broadcast Music, Inc.*, No. CV 11-4052, 2011 WL 9753912, at *5 (C.D. Cal. July 5, 2011), despite acknowledging the sensitivity Lightstone invokes, the court nevertheless compelled production given the relevance of and need for the documents.

Lightstone cites two cases in support of its proposition that courts should provide particular

---

[2] Delta is not aware of Lightstone having even run the necessary searches to enable it to assess burden, much less present actual facts demonstrating any burden at all.

8

sensitivity to burdens placed on non-parties. Yet in those cases (unlike here), the requested documents bore, at best, an attenuated relationship to the case. In *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, National Ass'n*, the third party represented that it had *no connection* at all to the issues in the case. *See* Nos. 14-CV-9371, 14-CV-9764, 2017 WL 9401102, at *2 (S.D.N.Y. Mar. 2, 2017). As *Blackrock* concluded, "the discovery [Defendant] seeks from [the third party is] not relevant and is much closer to expert industry discovery rather than fact discovery. For these reasons alone, the motion is denied."

Similarly, in *Arista Records LLC v. Lime Group LLC*, defendant licensee sought discovery from a third party licensee based on mere "speculation" that the requested documents *might* elucidate how plaintiffs treated their licensees (*i.e.*, with no factual basis to think that they in fact would do so). *See* No. 06-CV-5936, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011). The court contrasted the earlier *Viacom* case, where production *had* been ordered when there was "reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions." *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008). Notably, the production was ordered "in the face of an argument that the 'same' documents could be obtained from a party." *Id.*

In stark contrast to *Blackrock*, ███████████████████████████████████████████████████████████████████████████████████. And unlike in *Arista* (and precisely as in *Viacom*), Marriott's anemic production of just a single document provides "reason to believe" Lightstone has additional material—and thus production should be ordered. *Viacom*, 2008 WL 3876142, at *3; *Kenyon*, 2016 WL 5930265, at *6; *WPIX*, 2011 WL 9753912, at *5.

### III. LIGHTSTONE HAS FAILED TO ESTABLISH A BASIS FOR COST SHIFTING

Courts in this district routinely refuse to order cost shifting where the party propounding a subpoena has taken reasonable steps to avoid any undue burden on the responding non-party.

9

*Morales v. Kavulich & Assocs., P.C.*, No. 16-CV-2134, 2017 WL 2712948, at *2 (S.D.N.Y. June 15, 2017). As that is exactly what Delta has done (*see* Ex. D), there is no basis for cost shifting, particularly as Lightstone's intransigence has forced *Delta* to incur significant costs.

Furthermore, Lightstone's contention of an undue burden if it complied with the Subpoena (*see* Opp. at 12) is directly at odds with its own contention that it does not expect to have much, if anything at all, to produce. If true, then any expense cannot be more than *de minimis*. *See Kennedy v. Basil*, No. 18-CV-2501, 2019 WL 2343153, at *5 (S.D.N.Y. June 3, 2019) (rejecting cost shifting lacking sufficient articulated basis). As Lightstone has not even tried to explain how Delta's compromise presents a significant expense, let alone an undue burden, its request for cost shifting should be denied. *Morales*, 2017 WL 2712948, at *2 (recognizing cost shifting is only required "if the issuing party does not 'take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena,'" and denying cost shifting where plaintiff had taken such steps); *see also, e.g.*, *Bridgeport*, 2007 WL 4410405, at *3 (ordering production responsive to subpoena, noting that the third party could later petition for "some portion" of costs to be shifted "if the costs of [compliance] become onerous"); *Kennedy*, 2019 WL 2343153, at *5.

As for Lightstone's sole cited case, it only recognizes that cost shifting is appropriate to prevent "*significant* expense" to a non-party—but Lightstone has failed to present *any* basis to expect significant expense here. *Koopmann v. Robert Bosch, LLC*, No. 18-CV-4065, 2018 WL 9917679, at *1 (S.D.N.Y. May 25, 2018) (emphasis added). Accordingly, its preposterous suggestion that this Court impose cost shifting should be denied.

## **CONCLUSION**

For the foregoing reasons, Delta respectfully requests that the Court grant its Motion and order Lightstone to comply with the Subpoena, at least as narrowed by Delta's proposal. (*See* Ex. D.)

| | |
|---|---|
| Dated: May 7, 2021 | */s/ Claudia Ray*<br>Dale M. Cendali<br>Claudia Ray<br>Shanti Sadtler Conway<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>dale.cendali@kirkland.com<br>claudia.ray@kirkland.com<br>shanti.conway@kirkland.com<br><br>Megan L. McKeown<br>KIRKLAND & ELLIS LLP<br>609 Main Street<br>Houston, TX 77002<br>Telephone: (713) 836-3600<br>Facsimile: (713) 836-3601<br>megan.mckeown@kirkland.com<br><br>*Attorneys for Plaintiff Delta Air Lines, Inc.* |